IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FRANK TROTTA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>URS FEDERAL SERVICES, INC.; AECOM; JONATHAN UJVARY; KIM VAOVASA; and DOE DEFENDANTS 1-25,<br><br>　　　　　　Defendants. | CIV. NO. 20-00340 JMS-KJM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT, ECF NO. 24. |

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT, ECF NO. 24

#### I.　　INTRODUCTION

Before the court is Plaintiff Frank Trotta's ("Plaintiff") Motion to Remand this action to state court. ECF No. 24. Defendants Amentum Services, Inc. (formerly URS Federal Services, Inc.) and AECOM, Plaintiff's former employers, removed the case asserting diversity jurisdiction under the "snap removal" doctrine and federal question jurisdiction under the "federal enclave" doctrine. Both arguments fail. Defendants misapprehend the snap removal doctrine, which cannot create jurisdiction where, as here, the parties are not diverse in the first instance. And Defendants' federal enclave jurisdiction arguments are

precluded by the plain language of the Hawaii State Admission Act of 1959, as courts in this district have previously held in rejecting these same arguments (made by the same defense counsel). *See Tharp v. Alutiiq Pac., LLC*, 2018 WL 6628945 (D. Haw. Sept. 10, 2018) (Mansfield, J.); *Kalaka Nui, Inc. v. Actus Lend Lease, LLC*, 2009 WL 1227892 (D. Haw. May 5, 2009) (Mollway, J.). Plaintiff's Motion for Remand is GRANTED.

## II. BACKGROUND

On July 14, 2020, Plaintiff filed this lawsuit in the Circuit Court of the First Circuit, State of Hawaii, against his former employer, URS Federal Services (subsequently renamed Amentum Services, Inc.) ("Amentum"); its parent company, AECOM; his former supervisors, Jonathan Ujvary and Kim Vaovasa; and a number of Doe Defendants (collectively, "Defendants"). ECF No. 1-1 at PageID # 5. Plaintiff as well as Defendants Ujvary and Vaovasa are citizens and residents of the State of Hawaii. ECF No. 1-1 at PageID ## 5-6. Defendant Amentum is incorporated in Delaware and maintains its principle place of business in Maryland. ECF No. 1 at PageID # 3. And Defendant AECOM is incorporated in Delaware and maintains its principle place of business in California. *Id.* In his Complaint, Plaintiff asserts purely state law statutory and common law claims

arising from his allegedly wrongful termination from employment with Amentum. ECF No. 1-1 at PageID ## 13-16.[1]

Amentum and AECOM are federal defense contractors. ECF No. 33 at PageID # 118. As alleged in the Complaint, Plaintiff was first employed by Amentum from 2009 to 2011 as a decommission and decontamination waste operator at the West Valley Nuclear Remediation Site in West Valley, New York. ECF No. 1-1 at PageID # 7. In 2013, Plaintiff was hired once more by Amentum as an ordinance technician at the Pueblo Chemical Agent Destruction Plant in Pueblo, Colorado. *Id.* at PageID # 8. In 2016, Plaintiff was transferred to the Wheeler Army Airfield ("Wheeler"), a U.S. military installation located in the City and County of Honolulu, Hawaii where, under an Amentum defense contract, he worked as an environmental compliance officer/hazmat inspector. *Id.*

Plaintiff alleges that while he was employed at Wheeler, he observed "multiple safety violations and waste of federal funds by Defendant [Amentum] and/or AECOM." *Id.* at PageID # 9. Specifically, he alleges that Defendants were violating Hawaii Garrison policy by ordering excessive amounts of chemicals that could not be used before they expired and by storing chemical waste unsafely. *Id.*

---

[1] Plaintiff alleges violation of the Hawaii Whistleblower Protection Act, Hawaii Revised Statutes ("HRS") § 478-61 et seq.; violation of Hawaii's employment discrimination statute, HRS § 378-2; a common law claim for wrongful and retaliatory termination in violation of public policy; and a common law claim for slander and libel. *Id.*

3

at PageID # 10. He also alleges that Defendants were not providing basic safety and personal protective equipment to their employees, were not paying employees for time worked, and were violating their own internal policies. *Id.* at PageID # 9-10. Plaintiff alleges that he attempted to report these violations internally, including to Defendants Ujvary and Vaovasa, but was ignored. *Id.* at PageID # 10. He then reported the violations of the Hawaii Garrison policy to Wheeler's Director of Public Works, who began documenting violations and required Defendants to document their work in order to avoid future violations. *Id.* at PageID # 11. Shortly thereafter, Plaintiff was terminated from employment for "claiming excessive time off." *Id.* at PageID # 12. Plaintiff alleges that this reasoning was pretextual and that, in retaliation for his reporting their malfeasance, "Defendants Ujvary and Vaovasa conspired with management at Defendant [Amentum] and/or AECOM to falsely accuse Plaintiff of wrongdoing to justify the termination of Plaintiff's employment." *Id.* at PageID # 11.

The Complaint was served on both Amentum and AECOM by August 4, 2020. ECF No. 1 at PageID # 2. On August 5, 2020, and upon the consent of AECOM, Amentum removed the case to this court asserting diversity jurisdiction. ECF No. 1 at PageID ## 2-3. Amentum claimed that diversity jurisdiction is proper because, although Plaintiff, Defendant Ujvary, and Defendant Vaovasa are

all citizens of the state of Hawaii, Ujvary and Vaovasa had not yet been served at the time of removal. *Id.*

On August 10, 2020, Defendant AECOM filed a Joinder and Consent to Amentum's Notice of Removal and Statement of Supplemental Basis for Removal. ECF No. 11. In that filing, AECOM asserted that, in addition to diversity jurisdiction, the court has federal subject-matter jurisdiction "because this case involves activities within a federal military enclave." *Id.* at PageID # 40. The same day, Amentum filed an "Amended and Supplemented" notice of removal, likewise asserting that the court has both diversity jurisdiction *and* federal question jurisdiction under the federal enclave doctrine. ECF No. 13 at PageID # 46.

On August 20, 2020, the court held a status conference and informed the parties that it intended to raise *sua sponte* the issue of subject-matter jurisdiction as to both diversity and federal question jurisdiction. ECF No. 19. The court and parties agreed that the most appropriate process for addressing the question of subject-matter jurisdiction was to permit counsel for Plaintiff to file a motion to remand. *Id.* Plaintiff did so on October 23, 2020. ECF No. 24. The parties jointly requested, and were granted, a continuance of this matter until March 2021. *See* ECF Nos. 30 & 31. Defendants filed their Opposition on March 5, 2021, ECF No. 33, and Plaintiff declined to file a reply. *See* ECF No. 35. This matter is decided without a hearing pursuant to Local Rule 7.1(c).

5

### III.  LEGAL STANDARD

A plaintiff may file a motion to remand in order to challenge the removal of an action from state to federal court. Among other requirements, removal is proper so long as the plaintiff could have brought the action in federal court in the first instance; that is, so long as federal subject-matter or diversity jurisdiction exists. *See* 28 U.S.C. § 1441. Courts strictly construe § 1441 against removal and resolve any doubts in favor of remanding the case to state court. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)). The party seeking to remove the case bears the burden of establishing that removal is proper. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).

### IV.  ANALYSIS

Defendants make tortured arguments as to why both diversity and federal question jurisdiction are appropriate, drawing on the narrow doctrines of snap removal as to the former and federal enclave jurisdiction as to the latter. Both arguments are unavailing. Defendants misapprehend and misapply the law on snap removal. And, Defendants make arguments as to federal enclave jurisdiction that have been repeatedly raised (by the same defense counsel) and rejected in this district—with no attempt to distinguish (or even mention) these past unfavorable

6

rulings. *See, e.g.*, *Tharp*, 2018 WL 6628945; *Kalaka Nui*, 2009 WL 1227892. The court wholly agrees with the sound analysis in the prior decisions rejecting defense counsel's arguments. For these reasons, and as set forth in more detail below, the court finds that it lacks subject-matter jurisdiction in this case. Plaintiff's Motion to Remand is GRANTED.

**A.     Snap Removal**

Defendants first attempt to argue that removal is proper under the "snap removal" doctrine applicable in diversity jurisdiction cases. A federal court has original jurisdiction based on diversity if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). It is well-settled that § 1332 requires "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). And courts generally determine whether diversity exists based on the citizenship of the parties named in the complaint. *See id.* at 84; *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 721-22 (9th Cir. 2008). Here, because Ujvary and Vaovasa are named in the Complaint and, like Plaintiff, are citizens of the State of Hawaii, complete diversity is lacking. ECF No. 1-1 at PageID ## 5-6.

Despite the lack of diversity between the parties in this case, Defendants attempt to argue that diversity jurisdiction exists under the "snap

7

removal" procedure contained within 28 U.S.C. § 1441(b)(2) because they removed the case before Defendants Ujvary and Vaovasa were served. This argument is without merit.

Under 28 U.S.C. § 1441(a), a defendant may remove a state court case to federal court on the grounds of diversity jurisdiction. But § 1441(b)(2) places "an additional limitation on removal, known as the forum-defendant rule." *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 485 (5th Cir. 2020). Specifically, § 1441(b)(2) provides that: "[a] civil action *otherwise removable* solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought" (emphasis added). One of the purposes of allowing removal is to "protect out-of-state defendants from possible prejudices in state court." *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 940 (9th Cir. 2006). And because "[t]he need for such protection is absent . . . in cases where the defendant is a citizen of the state in which the case is brought," the forum defendant rule "allows the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court." *Id.*

The so-called "snap removal" doctrine developed based on interpretation of the phrase "properly joined and served" within § 1441(b)(2). The argument under snap removal is that in a case where removal on the basis of

8

diversity jurisdiction is otherwise precluded by the forum defendant rule, any defendant may remove the case to federal court so long as they do so before any in-state defendant has been served. *Texas Brine*, 955 F.3d at 485.[2] Importantly, the rules contained in § 1441(b)(2) are procedural rather than jurisdictional; existing "[s]eparate and apart from the statute conferring diversity jurisdiction." *Lively*, 456 F.3d at 939.

Here, AECOM and Amentum attempt to *create* diversity jurisdiction through the snap removal *process* by removing the case to federal court before the in-state defendants have been served. This they cannot do. Snap removal cannot create diversity jurisdiction; rather under the plain language of § 1441(b)(2), the snap removal process is appropriate only in cases "*otherwise removable* solely on the basis of" diversity jurisdiction. *See Gibbons*, 919 F.3d at 705 ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) *so long as a federal district court can assume jurisdiction*

---

[2] District courts are split as to whether the plain language of § 1441(b)(2) allows snap removal at all. *See, e.g.*, *Flandro v. Chevron Pipe Line Co.*, 2019 WL 1574811, at *6 (D. Utah Apr. 11, 2019); *LMN Consulting, Inc. v. DaVincian Healthcare, Inc.*, 2019 WL 2565281, at *2 (W.D. Tex. Mar. 29, 2019); *Magallan v. Zurich Am. Ins. Co.*, 228 F. Supp. 3d 1257, 1259 (N.D. Ok. 2017). But every circuit court to have addressed the issue to date has decided that the statute allows snap removal. *See Texas Brine*, 955 F.3d at 484-87; *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018). Here, the court need not decide this issue because diversity jurisdiction does not exist in the first instance.

9

*over the action*.") (emphasis added); *see also, e.g.*, *Texas Brine*, 955 F.3d at 484-87 (allowing snap removal where complete diversity exists between the parties named in the complaint); *Encompass*, 902 F.3d at 149, 153-54 (same); *see also Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969) ("A nonresident defendant cannot remove a 'nonseparable' action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or nonservice upon the codefendant") (citing *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939)).

      In short, because Plaintiff, Defendant Ujvary, and Defendant Vaovasa are all citizens of the State of Hawaii, the court lacks original subject-matter jurisdiction on the basis of diversity of citizenship. As such, the case is not "otherwise removable solely on the basis of diversity of citizenship" and the snap removal process is unavailable to defendants. *See Woods v. Ross Dress for Less, Inc.*, 833 Fed. Appx. 754, 757 (10th Cir. 2021) (rejecting—in a procedurally identical case—an out-of-state defendant's attempt to invoke snap removal where an in-state plaintiff initiated the case but an in-state defendant had not yet been served, because "a defendant's citizenship is part of the diversity analysis regardless of whether the defendant has been served," and in the absence of "complete diversity between all named plaintiffs and all named defendants . . . the court lacked removal jurisdiction under § 1441(a)").

## B. Federal Enclave Jurisdiction

Next, Defendants argue that this court has federal question jurisdiction under the federal enclave doctrine. Specifically, Defendants argue that Wheeler is a federal enclave subject to the exclusive jurisdiction of the federal government and that, because plaintiff's claims arose on Wheeler, federal courts have exclusive jurisdiction over those claims. *See* ECF No. 33 at PageID ## 129-39.

Counsel for Defendants has unsuccessfully put forth this precise argument at least twice in the past—including directly with respect to Wheeler. *See Tharp*, 2018 WL 6628945, at *4-8 (rejecting argument that federal government has exclusive jurisdiction over Wheeler as a "critical" federal enclave); *Kalaka Nui*, 2009 WL 1227892 at *6 (rejecting argument that federal government has exclusive jurisdiction over Hickam Air Force Base as a federal enclave). Defense counsel now, once again, advances the same arguments—without alerting the court to his previous unsuccessful efforts or attempting to distinguish them in any way.[3] ECF No. 33 at PageID ## 113-16. Although the court is not bound by other district court rulings, it agrees entirely with the reasoning of the judges that have

---

[3] In prior cases, defense counsel argued that the federal enclave doctrine precludes state-law claims, whereas, here, he argues that the federal enclave doctrine divests state courts of jurisdiction. *See Kalaka Nui*, 2009 WL 1227892, at *1; *Tharp*, 2018 WL 6628945, at *1. Despite the different outcomes sought, the substance of the arguments made in *Kalaka Nui*, *Tharp*, and this case are effectively identical.

11

previously rejected defense counsel's federal enclave jurisdiction arguments, as summarized below.

The Forts and Arsenals clause of the U.S. Constitution grants to Congress exclusive legislative authority over federal military enclaves. U.S. Const. art. I, § 8, cl. 17.[4] When the federal government reserves a federal enclave, its jurisdiction is generally exclusive, meaning that "state law that would otherwise govern the land becomes assimilated as federal law, resulting in the federal question jurisdiction." *Ching v. Alia*, 2014 WL 4216051, at *5 (D. Haw. Aug. 22, 2014); *see also James v. Dravo Contracting Co.*, 302 U.S. 134, 141 (1937) (explaining that the "exclusive legislation" language in the Forts and Arsenals clause is "consistent only with exclusive jurisdiction"). But where Congress provides "clear and unambiguous authorization" for state regulation, the state and federal governments enjoy concurrent jurisdiction over federal enclaves. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988); *see also Ching*, 2014 WL 4216051, at *5. And where state and federal jurisdiction is concurrent, federal question jurisdiction exists only if "federal law creates a cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial

---

[4] The Forts and Arsenals clause provides Congress "exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const., art. 1, § 8, cl. 17.

question of federal law." *Ching*, 2014 WL 4216051, at *6 (citing *Gunn v. Minton*, 468 U.S. 251, 258 (2013)).

Wheeler, like all U.S. military installations existing in Hawaii at the time, was reserved as a federal enclave through the Hawaii State Admission Act of 1959. *See* ECF No. 29 at PageID # 106. Defendants first attempt to argue that the Admission Act reserved exclusive jurisdiction over all federal enclaves, including Wheeler. ECF No. 33 at PageID # 132. But in this State and District, it is well-settled that the plain language of the Admission Act provides "clear and unambiguous authorization" for the State of Hawaii to exercise concurrent jurisdiction over federal enclaves. *Kalaka Nui*, 2009 WL 1227892, at *5; *Tharp*, 2018 WL 6628945, at *4 (same); *Lake v. Ohana Mil. Cmty., LLC*, 2017 WL 11515424, at *10 (D. Haw. Mar. 15, 2017) (same); *see also Ching*, 2014 WL 4216051, at *4 (same); *State v. Thomas*, 8 Haw. App. 497, 503, 810 P.2d 668, 671 (Ct. App. 1991) (same). Indeed, while Section 16(b) of the Admission Act vests Congress with "the power of exclusive legislation" over military bases, this reservation of authority:

> shall not operate to prevent such lands from being a part of the State of Hawaii, or to prevent the said State from exercising over or upon such lands, concurrently with the United States, *any jurisdiction whatsoever which it would have in the absence of such reservation of authority* and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority.

13

Pub. L. No. 86-3, 73 Stat. 4, 11-12 (March 18, 1959) (emphasis added).

        Thus, as both Judge Mollway and Judge Mansfield previously explained in rejecting defense counsel's argument, "[t]he Admission Act clearly provides that Hawaii has concurrent jurisdiction over such military bases so long as state jurisdiction is consistent with post-Admission Act laws enacted by the United States Congress." *Kalaka Nui*, 2009 WL 1227892, at *5; *Tharp*, 2018 WL 6628945, at *5 (adopting the holding in *Kalaka Nui*). As further explained by Judge Mollway, the legislative history of Section 16(b) supports this conclusion. A 1959 Senate Report concerning the Admission Act provides that, "'until Congress acts to exercise its reserved power,' Hawaii is authorized 'to exercise all of its other usual functions in the area.'" *Kalaka Nui*, 2009 WL 1227892, at *5 (quoting S. Rep. No. 80, 1st Sess. (1959), *reprinted* in 1959 U.S.C.C.A.N. 1346, 1365). Adopting the Hawaii Intermediate Court of Appeal's interpretation of this legislative history, Judge Mollway explained that the Report indicates "'that it was the intent of Congress to accord to the state concurrent jurisdiction with the federal government over lands in Hawaii owned or controlled by the federal government at the time of Hawaii's admission as a state.'" *Id.* (quoting *Thomas*, 8 Haw. App. at 503, 810 P.2d at 671); *see also Tharp*, 2018 WL 6628945, at *5 (adopting *Kalaka Nui*'s interpretation of the 1959 Senate Report). The court agrees with this

14

interpretation. The Admission Act vests the State of Hawaii with broad concurrent jurisdiction over federal enclaves.

In the alternative, defense counsel attempts to argue—as he did unsuccessfully in *Tharp*—that the federal government has exclusive jurisdiction over Wheeler, in particular, because it is a "critical area" within the meaning of the Admission Act. ECF No. 33 at PageID ## 134-37. It is true that the final proviso of Section 16(b) appears to carve out an exception to the concurrent jurisdiction of the state and federal governments, providing:

> The United States shall continue to have sole and exclusive jurisdiction over such military installations as have been heretofore or hereafter determined to be critical areas as delineated by the President of the United States and/or the Secretary of Defense.

Pub. L. No. 86-3, 73 Stat. 4, 11-12 (March 18, 1959). But defense counsel fails to show that Wheeler has ever been designated a "critical area" within the meaning of the Act. In support of this argument, he puts forth the following facts: (1) that Wheeler "has survived all five rounds of the Defense Base Realignment and Closure process"; (2) that Wheeler is used to "base the 25th Combat Aviation Brigade ("25th CAB")" and the Brigade's "mission-critical Air Assault training range"; (3) that the 25th CAB is a "critical frontline ground component . . . assigned to the United States Indo-Pacific Command"; (4) that Wheeler is considered an "intelligence, surveillance and reconnaissance facility pursuant to

15

Presidential Decision Directive 63"; and (5) that in memoranda issued in response to the COVID-19 threat, the Department of Defense called the work of military contractors nationwide, including Amentum's work at Wheeler, "critical to the security of this Nation." ECF No. 33 at PageID ## 134-36.

But none of these facts plausibly suggests that the President or Secretary of Defense has ever specifically designated Wheeler as a "critical area" as necessary to authorize exclusive federal jurisdiction under the Admission Act. Moreover, as in *Tharp*, Defense Counsel does not "explain how [these] source[s] support [his] proposition that Wheeler AAF qualifies as a 'critical area.'" 2018 WL 6628945, at *8. He merely lists these facts before concluding that "Wheeler Army Airfield is an area that has been determined and delineated as 'critical' to national defense." ECF No. 33 at PageID # 137.

This showing is insufficient to demonstrate that the Admission Act affords the federal government exclusive jurisdiction over Wheeler. Indeed, authority merely "indicating that [a military installation] and its surrounding contiguous federal lands have been declared 'vital' to the national defense of the country" does not satisfy "the determination required in the last proviso of § 16(b)" that the base itself be "delineated as a critical area" by the President or Secretary of Defense. *Tharp*, 2018 WL 6628945, at *8 (quoting *Thomas*, 8 Haw. App. at 504,

16

810 P.2d at 671-72). In short, the State of Hawaii and the federal government enjoy concurrent jurisdiction over Wheeler.

Having decided that the state and federal governments enjoy concurrent jurisdiction, the only question remaining is whether the federal government's concurrent jurisdiction can provide a basis for removal of this case from state court. As this court set forth in *Ching*, "the question of federal subject matter jurisdiction boil[s] down to whether the defendant established that the action presented a federal question—that is, whether a federal law creates a cause of action or the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." 2014 WL 4216051, at *6. But Defendants do not attempt to argue that this case involves a federal question. Instead, they solely rely on their argument that federal jurisdiction is exclusive. *See* ECF No. 33 at PageID # 139 ("Here, there is no reason to even consider concurrent jurisdiction or to apply the 'substantial federal interest' test because criticality restores outright exclusivity to the federal courts."). Defendants bear the burden of establishing jurisdiction. By declining to provide any argument as to federal question jurisdiction where, as here, concurrent enclave jurisdiction exists, they have utterly failed to carry their burden. Thus, the court concludes that it lacks federal question jurisdiction and that remand to state court is appropriate.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Remand, ECF No. 24, is GRANTED and the case is remanded back to the Circuit Court of the First Circuit, State of Hawaii. The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 2, 2021



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Trotta v. URS Federal Services et al.*, Civ. No. 20-00340 JMS-KJM, Order Granting Plaintiff's Motion to Remand, ECF No. 24

18